UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

T J SUTTON,

                    Plaintiff,                      Case No. 1:23-cv-1317

v.                                         Honorable Paul L. Maloney

PHILIP ZUPONT et al.,

                    Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. This case was transferred to this Court from the United States District Court for the Western District of Michigan on December 15, 2023. (ECF No. 5.) Plaintiff has filed a motion for leave to proceed *in forma pauperis*, and upon consideration, the Court will grant Plaintiff leave to proceed *in forma pauperis*.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Furgerson, Vaughn, Bonn, and Davids. The Court will also dismiss, for failure to state

a claim, Plaintiff's Fourteenth Amendment due process, Eighth Amendment, and § 1983 conspiracy claims against remaining Defendants Zupont and Moore. Plaintiff's Fourteenth Amendment equal protection claim against Defendants Zupont and Moore will remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Defendants Law Librarian Philip Zupont, Classification Director Tim Moore, Assistant Deputy Warden Unknown Furgerson, Assistant Deputy Warden Unknown Vaughn, Deputy Warden Unknown Bonn, and Warden John Davids. (ECF No. 1, PageID.2.)

Plaintiff alleges that he was assigned to work as a prisoner law library clerk in June of 2017. Plaintiff was oriented by non-party Law Library Technician Novack, who instructed him that all prisoners must do their own legal work and that law library clerks were not permitted to do other prisoners' legal work, or to give any legal advice. Plaintiff was given an above average score of 36 throughout his time on the job. Defendant Zupont started working as the ICF law librarian in 2019, and Zupont and Plaintiff maintained a positive work relationship. (*Id.*, PageID.3.)

On August 1, 2022, inmate McKenzie, who is white, was transferred out of ICF, vacating his position in the law library. The vacated position required a seven-day detail, which amounted to a higher monthly income. Based on seniority and job experience, Plaintiff, who is Black, was next in line to fill the position. However, Defendant Moore placed a newly hired, inexperienced white prisoner in the job, disregarding Plaintiff's five years of seniority and experience. (*Id.*, PageID.3–4.) Plaintiff also asserts that the "Prisoner Program and Work Assignment Evaluation"

form distinguishes white prisoners from non-white prisoners and allows staff to make determinations based on race. (*Id.*, PageID.3.)

On August 17, 2022, Plaintiff spoke with Defendant Moore about the job, but was told he was "not right for the position." (*Id.*, PageID.4.) After some discussion, Defendant Moore "admitted that Defendant Zupont instructed him to place another white prisoner in that position." (*Id.*, PageID.4.) On August 22, 2022, Plaintiff wrote a letter to Defendant Bonn "explaining the racial imbalance" that existed in the law library workers and asserting that he was being excluded from the position based on race. (*Id.*) On August 27, 2022, Plaintiff "mysteriously received a detail assigning him" to the position vacated by inmate McKenzie. "Defendant Zupont became visibly disturbed and refused to orientate" Plaintiff for the new position, telling Plaintiff to "figure it out himself." (*Id.*) "On one occasion," Plaintiff asked Defendant Zupont "about an important aspect[] of the job," and Defendant Zupont told Plaintiff: "don't get comfortable, I did not approve you for this position." (*Id.*, PageID.4–5.) Defendant Zupont stated that he planned to speak with Defendant Moore "about placing someone else in the position." (*Id.*, PageID.5.) Defendant Zupont refused to provide any information or assistance to Plaintiff "regarding the job's responsibilities." (*Id.*)

On November 21, 2022, after working in the new position for approximately three months, Defendant Zupont stopped Plaintiff when he was entering the law library and told him that "he was terminated from all law library positions." (*Id.*) Defendant Zupont ordered Plaintiff to leave the law library immediately. When Plaintiff asked why, Defendant Zupont told him that "he was being written a misconduct" for misuse of state property. (*Id.*) Plaintiff asked for a copy of the misconduct report and Defendant Zupont stated that it had been given to Defendant Moore to rewrite. Plaintiff was then issued a Program Work Assignment Evaluation stating that he was terminated as of November 21, 2022. (*Id.*)

3

On November 24, 2022, Plaintiff filed a grievance "requesting [d]ue [p]rocess in the termination process and requesting a hearing where he could inspect evidence against him and present a defense." (*Id.*, PageID.6.) On November 27, 2022, Plaintiff received a second Work Assignment Evaluation report, which was reviewed by Defendant Vaughn, stating that he was terminated on November 27, 2022, "after being observed using the law library computer on November 21, 2022." (*Id.*) Plaintiff was not allowed to review the evidence against him or to be heard in any meaningful manner. On December 1, 2022, Defendant Furgerson denied Plaintiff's grievance. Plaintiff wrote a letter to Defendant Bonn, notifying him of the unconstitutional loss of his job. (*Id.*)

Plaintiff states that Defendant Davids was "grossly negligent in supervising his subordinates," which constitutes deliberate indifference to Plaintiff's rights. (*Id.*, PageID.6–7.) Plaintiff contends that all of the Defendants "are elderly white men" who are "motivated by shared racial animus" and acted together to treat Plaintiff differently than similarly situated white prisoners. (*Id.*)

Plaintiff claims that Defendants violated his Fourteenth Amendment right to due process and equal protection, his Eighth Amendment rights, and engaged in a conspiracy to violate his civil rights. (*Id.*, PageID.7–9.) Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief. (*Id.*, PageID.9–10.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.    **Respondeat Superior**

Plaintiff claims that the failure of Defendants Bonn, Vaughn, and Furgerson to take corrective action against Defendants Zupont and Moore constituted deliberate indifference in violation of the Eighth Amendment. Plaintiff also asserts that Defendant Davids' failure to ensure that Plaintiff had a misconduct hearing violated his due process rights. However, Plaintiff fails to

allege any facts showing that Defendants Furgerson, Vaughn, Bonn, or Davids took any action against him, other than to state that Defendants failed to adequately supervise their subordinates or respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976),

and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any *facts* showing that Defendants Furgerson, Vaughn, Bonn, and Davids encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. His vague and conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants were personally involved in the events surrounding Plaintiff's reclassification to administrative segregation. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claims against Defendants Furgerson, Vaughn, Bonn, and Davids are premised on nothing more than respondeat superior liability, they are properly dismissed from this action.

### B.    Due process

Moreover, Plaintiff has failed to allege facts showing that his due process rights were violated. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

"Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). There is no right to prison employment. *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991); *James v. Quinlan*, 866 F.2d 627, 629–30 (3d Cir. 1989); *Garza v. Miller*, 688 F.2d 480, 485 (7th Cir. 1982); *see also Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (no constitutional right to prison job); *Adams v. James*, 784 F.2d 1077, 1079 (11th Cir. 1986) (same); *Lyon v. Farrier*, 727 F.2d 766, 769 (8th Cir. 1984) (same); *Manning v. Lockhart*, 623 F.2d 536, 538 (8th Cir. 1980); *Sigler v. Lowrie*, 404 F.2d 659

(8th Cir. 1968); *Woodall v. Partilla*, 581 F. Supp. 1066 (N.D.Ill. 1984); *Anderson v. Hascall*, 566 F. Supp. 1492, 1496 (D.Minn. 1983). *Accord, Baumann v. Arizona Dep't of Corr.*, 754 F.2d 841, 846 (9th Cir. 1985) (no constitutional right to jobs and educational opportunities); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir. 1985) (no liberty or property interest in vocational training). Because Plaintiff does not have a liberty interest in a prison job, he fails to state a due process claim.

### C.    Eighth Amendment

Nor does Plaintiff allege facts supporting an Eighth Amendment claim. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

The only deprivation asserted by Plaintiff in this case is the loss of employment in the law library. Plaintiff fails to allege any facts showing that he was subjected to conditions posing a substantial risk of serious harm. Therefore, Plaintiff fails to state an Eighth Amendment claim.

### D.  Equal Protection

Plaintiff asserts that Defendants Zupont and Moore violated his Fourteenth Amendment equal protection rights. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const.,

amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). When a practice adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such a practice "will be sustained only if [it is] suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440.

Plaintiff asserts that he was denied a job because he is Black and that a white prisoner with less experience was given the job. Plaintiff alleges that Defendant Moore admitted that Defendant Zupont had instructed him to place a white prisoner in the position. (ECF No. 1, PageID.4.) Plaintiff states that after he wrote a letter to Defendant Bonn regarding the matter, he was given the job, but that Defendant Zupont refused to train him and stated that he was going to speak to Defendant Moore about removing Plaintiff from the job. Plaintiff alleges that he was subsequently terminated from the job unfairly. (*Id.*, PageID.4–5.) Although a prisoner, such as Plaintiff, "has no constitutional right to prison employment or a particular prison job," *McKinley v. Bowlen*, 8 F. App'x 488, 492 (6th Cir. 2001) (citation omitted), "prison officials cannot discriminate against [a prisoner] on the basis of [the prisoner's] age, race, or handicap, in choosing whether to assign [the prisoner] a job or in choosing what job to assign [the prisoner]." *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (citation omitted). At this stage of the proceedings, the Court concludes that Plaintiff has adequately stated a Fourteenth Amendment equal protection claim against Defendants Zupont and Moore.

### E.    Conspiracy

Finally, Plaintiff claims that Defendants Zupont, Moore, Bonn, Vaughn, and Furgerson engaged in a conspiracy to violate his civil rights under § 1983. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44

(6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff alleges in a conclusory manner that Defendants Zupont, Moore, Bonn, and Vaughn "agreed on a course of conduct that violated the civil rights statute." (ECF No. 1, PageID.8.) Plaintiff also alleges that Defendant Furgerson's rejection of Plaintiff's grievance "show[ed] his willing agreement and participation in a course of conduct that violated the civil rights statute." (*Id.*)

As an initial matter, Plaintiff's only allegations against Defendants Bonn, Vaughn, and Furgerson are that they failed to adequately respond to his grievances and complaints, or to adequately supervise their subordinates. Such allegations are insufficient to show the existence of a conspiracy. Moreover, although Plaintiff alleges in a conclusory manner that Defendants "agreed on a course of conduct," Plaintiff fails to allege sufficient *facts* to support this assertion. As the United States Supreme Court has held, conclusory allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has

11

recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, Plaintiff's conspiracy claims under § 1983 will be dismissed.[1]

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Moreover, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Furgerson, Vaughn, Bonn, and Davids will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment due process, Eighth

---

[1] Plaintiff's conspiracy claims also would be barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). Initially applied to claims under 42 U.S.C. § 1985(3), *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510), the Sixth Circuit has concluded that the intracorporate conspiracy doctrine applies to claims under § 1983 as well, *Jackson v. City of Cleveland*, 925 F.3d 793, 817–19 (6th Cir. 2019). As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Id.* at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436–37 (6th Cir. 2019). Here, all Defendants are members of the same collective entity (the MDOC) who work at the same divisional location. Plaintiff does not even allege, much less show, that Defendants were acting outside the scope of their employment. The "scope of employment" limitation "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson*, 40 F.3d at 840. "The mere 'fact that two or more agents participated in the decision or in the act itself will normally not' suffice to create a conspiracy." *Id.* (quoting *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972)). To bring claims outside of the intracorporate conspiracy doctrine, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Id.* Plaintiff's complaint is devoid of facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties.

Amendment, and § 1983 conspiracy claims against remaining Defendants Zupont and Moore. Plaintiff's Fourteenth Amendment equal protection claim against Defendants Zupont and Moore remains in the case.

        An order consistent with this opinion will be entered.


Dated:  ___March 27, 2024___            ___/s/Paul L. Maloney_____
                                           Paul L. Maloney
                                           United States District Judge